IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LUTHER CURRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:23-CV-654-KFP |
| ) | |
| DAVID M. SHAULL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This case was originally filed in Macon County, Alabama. Doc. 1-1. Plaintiff Luther Curry alleges he was injured in an automobile accident caused by Defendant David Shaull. He asserts claims of negligence and wantonness and seeks unspecified compensatory and punitive damages. Doc. 1-1 at 3. Shaull removed the case asserting diversity jurisdiction under 28 U.S.C. § 1332(a). Doc. 1. Before the Court is Curry's Motion to Remand (Doc. 14), in which he argues Shaull has not met his burden of establishing the amount in controversy exceeds $75,000.[1] Upon consideration of the motion, the parties' briefing, and applicable case law, it is ORDERED that the motion (Doc. 14) is GRANTED.

**I.     STANDARD OF REVIEW**

Federal courts have limited jurisdiction and possess only the power authorized by a statute or the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

---

[1] Diversity of citizenship is not disputed. Curry is an Alabama citizen, and Shaull is a Rhode Island citizen. Doc. 1-1 at 3; Docs. 16, 17. Count III asserts claims against fictitious parties, but, "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a)[,] the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

(1994). Courts should presume that a case lies outside this limited jurisdiction, and the burden of establishing the contrary is on the party asserting jurisdiction. *Id.* Although a defendant has the statutory right to remove in certain situations, the plaintiff is still the master of his claim. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). For that reason, a defendant's right to remove and a plaintiff's right to choose his forum are "not on equal footing." *Id.* Accordingly, a defendant's removal burden is a heavy one. *Id.* If a plaintiff fails to make a specific demand for damages in the complaint, "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

When a defendant removes a case within the first thirty days after receipt of the initial complaint, a court considers both the initial complaint and other evidence introduced by the defendant. *See Sullins v. Moreland*, 511 F. Supp. 3d 1220, 1223–24 (M.D. Ala. 2021) (citing *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 753–754 (11th Cir. 2010)). A court may use "'deduction, inference, or other extrapolation' to determine whether the relevant evidence submitted by the removing party supports the existence of the required amount in controversy." *Sullins,* 511 F. Supp. 3d at 1224 (quoting *Pretka*, 608 F.3d at 753). When a court is presented with a notice of removal without facts or specific allegations, "it may not speculate or divine 'by looking at the stars' the amount in controversy." *Id.* (quoting *Pretka*, 608 F.3d at 753).

## II.   DISCUSSION

When a complaint does not make a specific demand for damages, removal is proper if it is "facially apparent" from the complaint that the amount in controversy exceeds the jurisdictional threshold. *Id*. at 1223 (citing *Pretka*, 608 F.3d at 754 and *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). If it is not facially apparent from the complaint, courts look to the notice of removal and may require evidence relevant to the amount in controversy at the time of removal, including the defendant's own affidavits, declarations, or other documentation. *Id*.

### A.   Curry's Complaint

The Complaint alleges that Shaull, while operating a Ford Expedition on Interstate 85 in Macon County, failed to keep a proper look out, was following too closely, and caused a chain-reaction accident in which Shaull's vehicle struck a vehicle, causing that vehicle to strike Curry's vehicle. Doc. 1-1 at 2–3. These are the only facts alleged in the Complaint.[2] As mentioned above, Curry seeks unspecified compensatory and punitive damages, and his list of damages includes medical bills, other financial losses, pain and suffering, mental anguish, emotional distress, lost wages, and physical injuries. Doc. 1-1.

In arguing that the jurisdictional amount in controversy is facially apparent from the Complaint, Shaull points to Curry's "myriad" of damages and, particularly, the request for unspecified punitive damages. Doc. 1 at 7. Punitive damages must be considered when

---

[2] Count II of the Complaint, filed on October 9, 2023, asserts a claim against Safeway Insurance Company of Alabama, Inc., for underinsured/uninsured motorist benefits. Curry dismissed this UIM claim on October 26, 2023. Doc. 1-1 at 29–32.

determining the jurisdictional amount in controversy in diversity cases. *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010) (citation omitted). However, a request for punitive damages does not demonstrate, either singularly or in combination with the Complaint's minimal allegations, that the amount in controversy exceeds $75,000. "To be sure, plaintiff's claim for punitive damages is properly considered in the evaluation of whether defendant[] [has] shown that the amount in controversy exceeds $75,000. But there is nothing talismanic about such a demand that would per se satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." *Lambeth v. Peterbilt Motors Co.*, No. 12-CV-169-WS-N, 2012 WL 1712692, at *4 (S.D. Ala. May 15, 2012).

Under Alabama law, "[p]unitive damages are not awarded because the injured party is entitled to them as a matter of right; they are awarded as a punishment to the wrongdoer and to deter him and others in the same or similar situation from such wrongdoing in the future." *City Bank of Ala. v. Eskridge*, 521 So. 2d 931, 933 (Ala. 1988); *see also* Ala. Code § 6-11-20 (defining "wantonness," for purposes of punitive damages, as conduct "carried on with a reckless or conscious disregard of the rights or safety of others"). Here, the value of Plaintiff's punitive damages cannot be ascertained without engaging in unbridled speculation. The Complaint provides little support for egregious or reprehensible conduct, alleging only that Shaull was following too closely and failed to keep a proper lookout. *See Roe*, 613 F.3d at 1065 (recognizing that, in assessing punitive damages under Alabama law, "the worse the defendant's conduct was, the greater the damages should be"); *Arrington v. State Farm Ins. Co.*, No. 2:14-CV-209-CSC, 2014 WL 2961104, at *7 (M.D.

4

Ala. July 1, 2014) ("'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'") (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)). On the record before the Court and with no basis for calculating compensatory damages, there is no reasonable way for the Court to value the punitive damages.

Moreover, in *Sullins*, *supra*, cited by Shaull as a motor vehicle collision case where this Court held the amount-in-controversy requirement was established, the Court considered the punitive damages request in conjunction with the facts alleged in the complaint. Sullins was struck by an 18-wheeler, and his complaint alleged he was "seriously injured" and that his car had to be towed from the scene. *Id.* at 1229 (distinguishing these allegations from the "bare pleadings" in *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316 (11th Cir. 2001)). But even these additional factual allegations plus the punitive damages demand did not make the amount in controversy facially apparent from the complaint, so the Court still looked to the notice of removal for more evidence when determining whether the defendant met his burden of proof.[3]

---

[3] Shaull cites *Sullins* in support of his statement that, although this Court "does not *necessarily* hold that a demand for an unspecified sum of punitive damages meets the 'facially apparent' test *per se*," the Court 'does find that the nature of the claims, the extent of alleged damages, and the damages sought to be probative and useful to determine whether the required amount in controversy exists.'" Doc. 1 at 7 (emphasis added) (citing *Sullins*, 511 F. Supp. 3d at 1229). Shaull is correct that the extent and type of damages is probative, but his suggestion—that the Court has come close to holding that an unspecified request for punitive damages, without more, meets the facially-apparent test—is misleading. The Court in *Sullins* actually stated: "Although the Court does not accept the notion that a complaint with unspecified punitive damages necessarily meets the jurisdictional minimum, it does find the nature of the claims, extent of alleged damages, and the damages sought to be probative and useful to determine whether the required amount in controversy exists." *Id*. In other words, the Court clearly rejected the notion that a punitive damages request alone meets the jurisdictional minimum.

Here, Curry was not struck by an 18-wheeler, he does not allege serious bodily injuries, and there are no allegations that his vehicle was rendered inoperable. Unlike *Sullins*, his allegations do not go beyond the bare pleadings. Curry's unadorned allegations, even with a punitive damages demand, are inadequate for establishing the amount in controversy requirement on the face of his Complaint. *See Williams*, 269 F.3d at 1320 (holding in personal injury action that "it [was] not facially apparent from Williams' complaint that the amount in controversy exceed[ed] $75,000" where plaintiff alleged she suffered "permanent physical and mental injuries," "incurred substantial medical expenses, suffered lost wages," "experienced a diminished earning capacity," and sought "general damages, special damages, and punitive damages in unspecified amounts"); *Goosby v. Briggs*, No. 2:20-CV-766-ECM, 2021 WL 298817, at *2 (M.D. Ala. Jan. 28, 2021) (stating that determining a "value would be an exercise in impermissible speculation" when complaint does not describe nature of plaintiff's injuries or medical treatment) (citing *Piard v. VRP Transp., Inc.*, No. 3:18-CV-847-WKW, 2019 WL 210402, at *5 (M.D. Ala. Jan. 15, 2019)). Therefore, Shaull must carry his burden by relying on evidence outside the Complaint.

---

Similarly, in his response to Curry's remand motion, Shaull cites *Sullins* with the following parenthetical description: "wherein the Defendants argued, *and the Court did not disagree*, that Macon County 'is notorious for substantively large jury verdict awards to personal injury plaintiffs. . . .'" Doc. 18 at 4 (emphasis added). The glaring omission from this description is that the Court had no reason to disagree with the defendant's argument. After listing the defendant's various arguments, the Court made no mention of Macon County's verdict history, as it was not a factor in the Court's determination of the value of the plaintiff's claims. *See Sullins*, 511 F. Supp. 3d at 1228–33.

B.     **Shaull's Notice of Removal**

With his Notice of Removal, Shaull filed an affidavit stating that his 2013 Ford Expedition was totaled in the collision and that he has liability insurance limits of $250,000 per person and $500,000 per accident. Doc. 1-3 at 2. He also asserts that Macon County is a venue "notorious for substantially and disproportionally large verdicts to personal injury plaintiffs," and he provides the Court with a sampling of jury verdicts from that county. Doc. 1 at 4, n.1. Finally, in his response to Curry's remand motion, Shaull points to Curry's failure to disclaim damages in excess of $75,000. Doc. 18 at 5–6. Cobbling these things together with Curry's punitive damages demand, Shaull asks the Court to assess the value of Curry's claims at more than $75,000.

1.     **Shaull's Additional Factual Allegations**

The fact that Shaull's vehicle was totaled sheds little light on the value of Curry's claims. The Court has no information about the value of Shaull's vehicle before it was totaled; the severity of the *second* collision, when Curry's vehicle was struck by the vehicle hit by Shaull; the damage to Curry's vehicle; or the injuries Curry suffered. "Judicial experience and common sense" inform the Court that a vehicle with little value can be totaled in a minor accident with almost no damage, and a vehicle of any value can be totaled with little or no injuries to the occupants. Further, the severity of the first collision involving Shaull's vehicle does not dictate the severity of the second collision involving Curry. In order for these facts to bear on the amount-in-controversy requirement, the Court would have to speculate that Shaull's vehicle was totaled because of the severity of the first collision, which then caused a second severe impact and serious injuries to Curry. Shaull

7

has given the Court a factual detail about his collision, but he has not given the Court a factual detail about Curry's collision.

With respect to Shaull's $250,00/$500,000 insurance policy limits, Shaull argues the limits are probative of the amount in controversy because the Complaint originally included a claim against Curry's UIM carrier.[4] Shaull again relies on *Sullins*, where the defendants removed the case after the plaintiff amended his complaint to add a UIM claim, and the Court found the addition of that claim probative of the amount in controversy. However, in *Sullins*, the driver defendant and his employer, a trucking company that owned the 18-wheeler involved in the accident, had federally-mandated insurance coverage of at least $750,000. The plaintiff argued it would be speculative for the Court to assume he knew about the policy limits and that the trucking company was in compliance with federal law, but the Court found these were "'reasonable deductions, reasonable inferences, or other reasonable extrapolations' that it [could] make. . . . The Plaintiff knew that J & J Martin was an out-of-state trucking company, so it is reasonable to conclude that he would know that the Defendant would be covered by federal trucking laws. . . . And the amount of insurance required was not a secret but was instead required by federal law." *Id.* at 1231. Here, the Court has no information allowing it to reasonably infer that Curry knew Shaull's

---

[4] As described above, Curry dismissed the UIM claim a couple of weeks after filing this action, before it was removed to federal court.

policy limits before or after he dismissed the UIM carrier, and any attempt to label Curry's motive in dismissing the UIM claim would be guesswork.[5]

## 2.   Other Macon County Jury Verdicts

With respect to Shaull's collected jury verdicts, it is unclear that they constitute evidence of the value of Curry's claims to any degree, much less sufficiently enough to carry the burden of establishing that jurisdiction exists over Curry's claims as described in the Complaint. *See Kumi v. Costco Wholesale Corp.*, No. 2:19-CV-442-MHT, 2019 WL 6359151, at *2 (M.D. Ala. Nov. 27, 2019) (stating that, "[a]ssuming such [jury verdict] references constitute evidence, the court lacks sufficient information about the cited cases—and the current case—to draw any reasonable conclusions about the case before the court") (citing *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1221 (11th Cir. 2007)) (finding defendant's references to recent jury verdicts in support of removal "in no way clarifies" the value of claims before the court because, "with a record bereft of detail," the court could not "possibly ascertain how similar the current action is to those the defendants cite").

Likewise, the Court has no information suggesting that Shaull's collection of cases is indicative of the value of Curry's claims, and the information the Court does have only serves to distinguish Curry's case. The cases referenced in Shaull's Notice of Removal were filed against corporations, not individuals. One case involved a slip and fall where

---

[5] Shaull argues Curry's dismissal of his UIM carrier with prejudice is of no consequence because Alabama law provides that a plaintiff can merely give a carrier notice of the lawsuit, but, again, determining Curry's motivation in dismissal requires speculation. On the facts before the Court, the act of suing the carrier initially is no more probative than dismissing the carrier.

9

the plaintiff alleged the defendant was on notice of the floor conditions before the plaintiff fell and suffered permanent injuries (Doc. 1-4 at 2–3), one case involved the death of a three-year-old child when a defendant road contractor failed to comply with the state's contract plans and specifications requiring closure of a lane if a drop-off was more than two inches below the main road (Doc. 1-4 at 5), and one involved a trucking company defendant who admitted negligence just before opening statements (Doc. 1-4 at 8).[6] Here, Curry alleges Shaull followed too closely and failed to keep a proper lookout; however, there is no corporate defendant, and there is no indication Shaull knew of and failed to correct certain road conditions, that the accident caused a death, or that he has admitted liability, all of which undoubtedly influenced the above verdicts to some degree. Therefore, using these jury verdicts to conclude the amount in controversy has been met in this case would require the Court to make an impermissible leap supported by speculation, not sense. *See Arrington v. State Farm Ins. Co.*, No. 2:14CV209-CSC, 2014 WL 2961104, at *6 (M.D. Ala. July 1, 2014) ("Judicial experience and common sense are

---

[6] Shaull includes *Arrowood Indem. Co. v. Macon Cnty. Greyhound Park, Inc.*, 757 F. Supp. 2d 1219 (M.D. Ala. 2010), *aff'd,* 447 F. App'x 947 (11th Cir. 2011) in his collection of jury verdicts, describing it as a case "documenting yet another million dollar-plus verdict for the plaintiff in a personal injury case and noting Macon County to be 'a venue in which high jury verdicts were common.'" As with *Sullins*, Shaull mischaracterizes the Court's statements. The Court did not note Macon County to be a venue where high jury verdicts are common; it noted that *those involved* in an underlying lawsuit understood that to be the case. *Id*. at 1222 (emphasis added). This distinction may be subtle, but Shaull's language suggests the Court expressed an opinion about Macon County as a venue. It did not. It merely set forth the opinions of those involved in the underlying lawsuit because an issue in the case—the reasonableness of the insured's timing in giving notice of a lawsuit to its excess liability carrier—turned on when the insured had knowledge of the likelihood of a large verdict. The Court has no information about the severity of the plaintiff's injuries, the extent of his damages, or the defendant's alleged culpability in the underlying lawsuit, so the jury verdict in that case cannot be used to clarify the value of Curry's claims. The Court does note, however, that a mediator in the underlying case suggested the verdict would be high due to the "financial prosperity" of the defendant, a corporation. *Id*. at 1227.

useless for making reasonable deductions, inferences, and extrapolations when the complaint is devoid of any averments from which to deduce, infer, or extrapolate. A reasonable inference is not a suspicion or a guess.") (citation and internal quotations omitted).

### 3.     Curry's Refusal to Disclaim Damages in Excess of $75,000

Finally, Shaull points to Curry's refusal to disclaim all damages above $75,000. After Curry filed his Motion to Remand, Shaull's counsel mailed a damages disclaimer to Curry's counsel with a letter stating, "If we do not hear from you in seven (7) days, we will assume that Mr. Curry is unwilling to disclaim damages in excess of $75,000." Curry never responded, but relying on this evidence as proof of the amount in controversy once again requires speculation by the Court. An unwillingness to stipulate to a specific threshold amount in controversy could be driven by any number of reasons, and the Court cannot hold it against Curry in this case, particularly when the deadline to comply was so short. *See Dunlap v. Cockrell*, 336 F. Supp. 3d 1364, 1368 (S.D. Ala. 2018) (noting "that a plaintiff's refusal to stipulate to amount in controversy (or its denial of requests for admission as to amount in controversy), without more, does not satisfy that burden because there are several reasons why a plaintiff would not so stipulate").

Shaull again cites *Sullins*, where this Court found the plaintiff's refusal to disclaim damages in excess of $75,000 was not dispositive but should be considered. Then, considering the refusal with the other evidence, including the plaintiff's "severe bodily injuries," a collision that rendered the plaintiff's car in operable, and the addition of a UIM claim despite a federally-mandated coverage minimum of $750,000, it concluded the

11

amount in controversy requirement had been met. *Id*. at 1230. In this case, Curry failed to sign the damages disclaimer and return it within seven days, but the Court has no evidence to consider alongside that failure, as there are no allegations of severe injuries, no facts showing the collision with Curry's vehicle was severe, and nothing indicating that Curry knew Shaull's policy limits before or after he dismissed his UIM claim.

Plaintiff's attempt to evade a definitive valuation of his claims is no doubt frustrating and, perhaps, borders on gamesmanship. Nevertheless, to uncloak the amount in controversy, the Court must consider what reasonable deductions, inferences, or extrapolations can be made from the pleadings to determine whether it is "more likely than not" the jurisdictional minimum is satisfied. *See Roe*, 613 F.3d at 1061–62, 1066. The Court must analyze the claims that are made, without speculating, to determine what is in controversy. *See e.g. Jones v. Rooks*, No. 1:20-CV-158-ECM, 2020 WL 1821456, at *3 (M.D. Ala. Apr. 10, 2020) (stating that "[w]ithout facts or specific allegations, the amount in controversy' can be determined 'only through speculation—and that is impermissible'") (quoting *Pretka*, 608 F. 3d at 753–54, citing *Lowery*, 483 F.3d at 1209). "When a moving defendant actually makes specific factual allegations and can support those allegations, a court may make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to aid in its determination whether the required amount in controversy exists.'" *Sullins*, 511 F. Supp. 3d at 1224 (citations omitted). Shaull has made no specific factual allegations from which the Court can make reasonable deductions, inferences, or extrapolations, and the Court cannot reasonably deduce that the amount in controversy is satisfied based on Shaull's submissions. "All told, the court has before it

little evidence from which it can determine the amount in controversy, and what little it does have leaves it with great doubt." *Kumi*, 2019 WL 6359151, at *2. Therefore, the Court concludes that Defendant has not proven by the preponderance of the evidence that the jurisdictional amount in controversy is met.

### III.  CONCLUSION

Accordingly, it is ORDERED that Curry's Motion to Remand (Doc. 14) is GRANTED, and this case is REMANDED to the Circuit Court of Macon County, Alabama.

The Clerk of the Court is DIRECTED to take the appropriate steps to effectuate remand.

Done this 2nd day of February, 2024.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE